```
        IN THE UNITED STATES DISTRICT COURT FOR THE
               SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION
```

LYNDON YOUNG,                  :

    Plaintiff,             :

vs.                            :    CIVIL ACTION 07-0765-WS-M

PERRY COUNTY CORRECTIONAL      :
CENTER, et al.,
                               :
    Defendants.


REPORT AND RECOMMENDATION

Plaintiff, a federal detainee proceeding pro se, filed a Complaint in the Circuit Court of Perry County, Alabama, under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). (Doc. 1, att. 1 at 2, 9). That action was removed to this Court and referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendants, Perry County Correctional Center ("PCCC"), "Warden Burford," and "Major Turner."[1]  (Docs. 2, 8, 9).  After consideration of these pleadings and for the reasons set out below, it is recommended that the Motion for Summary

---

[1] In the style of his Complaint, Plaintiff also names former United States Attorney General Alberto Gonzales and Office of Immigration Litigation Unit Supervisor, Robert Markle, as Defendants. (Doc. 1, att. 1 at 2). Neither of these Defendants, nor their successors, appears to have been served with the Complaint. In any event, for the reasons discussed herein, Plaintiff's action against these Defendants fails to state a claim upon which relief could be granted and is due to be dismissed.

Judgment of Defendants PCCC, Burford, and Turner be granted and that Plaintiff's action against these Defendants, as well as Defendants Gonzales and Markle, be dismissed with prejudice.

## I.  SUMMARY OF FACTUAL ALLEGATIONS AND PROCEEDINGS

From its review of the record, the Court summarizes the parties' allegations that are material to the issues addressed in this Report and Recommendation.  At approximately 6:00 p.m. on May 31, 2007, while incarcerated at the Perry County Correctional Center ("PCCC"), Plaintiff was attacked by a fellow inmate, "Mr. Poole."  (Doc. 1, att. 1 at 3, 9).  According to Plaintiff, at the time of the attack, he was being held in the PCCC as an Immigration and Customs Enforcement ("ICE") detainee awaiting transfer.  (Doc. 1, att. 1 at 3-4, 9; Doc. 6 at 1-2).  Plaintiff states that inmate Poole struck him at least three times in the left eye, once in his right eye, head, nose, and ribs, and pulled his hair.  (Doc. 1, att. 1 at 3).  Because there were no correctional officers in the vicinity at the time of the attack, Plaintiff ran to the "officers bub[b]le" and got the attention of an officer who had him transported to the hospital.  (Id.).  Plaintiff remained at the hospital for five hours and, upon his return to the PCCC, was transferred to the Federal Detention Center in Oakdale, Louisiana.  (Id. at 3-4).  As a result of the attack, Plaintiff suffered, and continues to suffer, pain in his left eye, right eye, nose, head, and neck, as well as dizziness,

2

headaches, permanent loss of vision, insomnia, restlessness, memory loss, and high blood pressure.  (Id. at 4-6).

Plaintiff filed his Complaint in the Circuit Court of Perry County, Alabama, on July 27, 2007, against Defendants PCCC, Assistant Warden Burford, and Major Turner alleging "deliberate indifference and lack of security by the staff[] at Perry County Correctional Center," leading to the attack by inmate Poole. (Id. at 2-4).  As noted above, Plaintiff also sues former Attorney General Gonzales and Immigration Supervisor Markle, although he makes no allegations against these Defendants. (Id.).  Plaintiff seeks nominal, compensatory, and punitive damages, as well as injunctive relief.[2]  (Id. at 6).

On October 25, 2007, Defendants filed a Notice of Removal of Plaintiff's action to this Court.  (Doc. 1).  On that same date, Defendants PCCC, Burford, and Turner filed a Motion to Dismiss, asserting, among other defenses, that they are entitled to judgment as a matter of law because Plaintiff's allegations do not establish a constitutional violation.  (Doc. 2).  By Order dated January 7, 2008, Plaintiff was ordered to inform the Court and file a response to the Motion to Dismiss, if he desired to

---

[2] Because Plaintiff is no longer incarcerated at the PCCC, his claims for injunctive relief are moot.  See Nordell v. Montgomery Alabama Police Dep't, 2008 WL 622043, *3 (M.D. Ala. 2008) ("An inmate's request for injunctive and declaratory relief in a section 1983 and Bivens action fails to present a case or controversy if the inmate is no longer confined in the facility at issue.").

3

proceed with this action, by January 22, 2008. (Doc. 3).  He notified the Court he wanted to proceed on January 18, 2008, but did not file a response to the motion. (Docs. 4, 5).

On July 24, 2008, the Court converted Defendants' Motion to Dismiss to a Motion for Summary Judgment and gave Plaintiff until August 8, 2008, to file a response to the motion.  (Doc. 8). None has been filed and the motion is now before the Court for consideration.  Defendants filed a supplement to the summary judgment motion on August 8, 2008. (Doc. 9).

## II.  SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989).  However, Rule 56(e) states that:

>           an adverse party [to a motion for summary
>           judgment] may not rest upon the mere
>           allegations or denials of the adverse party's
>           pleading, but the adverse party's response,
>           by affidavits or as otherwise provided in
>           this rule, must set forth specific facts
>           showing that there is a genuine issue for
>           trial.  If the adverse party does not so
>           respond, summary judgment, if appropriate,
>           shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

### III. DISCUSSION

As discussed above, Plaintiff's allegations indicate that, on the day that he was attacked by inmate Poole, he was being held in the PCCC as a federal detainee of the Department of Homeland Security Immigration and Customs Enforcement ("DHS-ICE") awaiting transfer to the Federal Detention Center in Oakdale,

Louisiana.  (Doc. 1, att. 1 at 3; Doc. 6 at 1-2).  Defendant PCCC is a private detention facility housing both state and federal inmates and detainees.  (Doc. 1, att. 1 at 3; Doc. 2 at 2; Doc. 2, att. 1 at 2).

Defendant Burford is the Assistant Warden of the PCCC, and Defendant Turner served as a Captain at the PCCC at the time of the alleged incident.  (Doc. 2 at 2).  The remaining Defendants, Gonzales and Markle, were federal officials at the time of the alleged incident.  (Doc. 1, att. 1).

In his Complaint, Plaintiff refers to his claim as both a "42 U.S.C. § 1983" and a "Bivens" action.  (Doc. 1, att. 1 at 2).  A Bivens action refers to a claim asserted under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and is "the federal analog to suits brought against state officials under [§ 1983]."  Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006).  "'Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.'"  Id. (citations omitted).  Section 1983, on the other hand, "provides a right of action to remedy unconstitutional state, not federal, conduct."  Alba v. Montford, 517 F.3d 1249, 1251 (11th Cir. 2008).  Because Plaintiff alleges a constitutional violation by individuals acting under color of federal law, the Court construes his

6

Complaint as an action asserted under Bivens.

    A.    Plaintiff's action against Defendants PCCC, Burford, and Turner.

Plaintiff's action against Defendants PCCC, Burford, and Turner is governed by two cases: Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 63 (2001), and Alba v. Montford, 517 F.3d 1249 (11th Cir. 2008). Based on the authority of these two cases, Plaintiff's action against these Defendants is due to be dismissed.

In Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 63 (2001), the United States Supreme Court held that there is no cause of action for damages under Bivens for a constitutional violation by a private entity acting under color of federal law. Id. at 66. As discussed above, the Supreme Court in Bivens implied a right of action for damages against federal agents alleged to have violated a citizen's constitutional rights. Id. at 71. The Court in Malesko, however, refused to imply a similar cause of action against a private corporation operating a detention facility for federal inmates, noting that it was for Congress, not the court, to provide such a cause of action and that the plaintiff had alternative tort remedies available to him. Id. at 66, 72-73.

Applying Malesko to the present action, Plaintiff's claim against the PCCC fails as a matter of law inasmuch as the PCCC is a private corporation operating a detention facility for federal

7

detainees, and Plaintiff likewise has alternative remedies available to him.

Similarly, in Alba, 517 F.3d 1249 (2008), the Eleventh Circuit held that there is no cause of action for damages for an alleged constitutional violation by an *employee* of a private corporation acting under color of federal law where the plaintiff has access to adequate state remedies.  In Alba, the plaintiff sued the individual employees of a private corporation operating a prison pursuant to a contract with the Federal Bureau of Prisons, alleging that various prison employees, acting pursuant to company policy, refused to schedule necessary surgery to correct a serious medical condition from which he suffered.  The Eleventh Circuit held that, just as damages actions against a private corporation operating under color of federal law were foreclosed under Bivens, so too were such actions against the corporation's employees.  Id. at 1254.  The Eleventh Circuit noted that the Supreme Court had extended Bivens in limited circumstances "only 'to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct.'"  Id. (emphasis in original) (citations omitted).  The court concluded that, because Alba had access to adequate state remedies against

the individuals employed by the private entity, an extension of Bivens to imply a cause of action was not justified. Id. at 1254-55; see also Akinsuroju v. Corrections Corp. of America, 2006 WL 2548075, *3 (S.D. Ga. 2006) ("this Court follows the lead of the Tenth and Fourth Circuits and declines to extend Bivens" to allow an action for damages against individual employees of a private corporation operating a federal prison); Peoples v. CCA Detention Centers, 422 F.3d 1090, 1108 (10th Cir. 2005)(holding that "under Malesko, federal prisoners have no implied right of action for damages against an employee of a privately operated prison under contract with the United States Marshals Service when state or federal law affords the prisoner an alternative cause of action for damages for the alleged injury"); Holly v. Scott, 434 F.3d 287, 292 (4th Cir. 2006) (holding that "[a]pplication of Bivens to private individuals simply does not find legislative sanction.")

Based on the foregoing, Plaintiff's action against Defendants Burford and Turner for damages for an alleged constitutional violation fails as a matter of law inasmuch as Defendants are the employees of a private corporation operating under color of federal law, and Plaintiff likewise has alternative remedies available to him in state court.

    B.    No Causal Connection With Defendants Gonzales and Markle.

Plaintiff also has named as Defendants in this action former

9

United States Attorney General Alberto Gonzales and Office of Immigration Litigation Unit Supervisor, Robert Markle. (Doc. 1, att. 1 at 2).  Plaintiff does not allege that these Defendants personally participated in any alleged constitutional deprivation.  Rather, it appears that Plaintiff is proceeding against these Defendants on a theory of supervisory liability.

"It is well established in this circuit that supervisory officials are not liable under [Bivens] for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'"  Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003) (citations omitted).  "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."  Id. (citations omitted).

> Supervisory liability "occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." Id. at 802 (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)); see also Greason v. Kemp, 891 F.2d 829, 836 (11th Cir. 1990) (explaining that a supervisor "can be held liable under [Bivens] when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff, and his conduct was causally related to the constitutional violation committed by his subordinate") (citations and footnote omitted).  A causal connection can be established "when a history of widespread abuse puts the responsible supervisor on

> notice of the need to correct the alleged deprivation, and he fails to do so," id., or when the supervisor's improper "custom or policy . . . resulted in deliberate indifference to constitutional rights," Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).  A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.  See Post v. City of Fort Lauderdale, 7 F.3d 1552, 1561 (11th Cir. 1993) (finding no supervisory liability in the absence of such an inference).

Dalrymple, 334 F.3d at 995-96.

Because Plaintiff has failed to even allege a causal connection between any action, omission, or policy of Defendant Gonzales or Defendant Markle and any alleged constitutional violation, Plaintiff's claim against these Defendants fails as a matter of law.

C.  No Constitutional Violation.

In addition to the foregoing, Plaintiff's Complaint is due to be dismissed in its entirety inasmuch as Plaintiff's allegations do not establish a constitutional violation by any Defendant in this action.  Although not well-pled, Plaintiff's constitutional claim appears to be that Defendants were "deliberate[ly] indifferen[t]" to a "lack of security" in the prison, which allowed him to be attacked by a fellow inmate. (Doc. 1, att. 1 at 4).

Because Plaintiff was being held in the PCCC as a federal

11

detainee, the Fifth Amendment, rather than the Fourteenth Amendment, applies to his claim.  <u>Daniel v. U.S. Marshall Serv.</u>, 188 Fed. Appx. 954, 961-962 (11th Cir. 2006) ("[t]he Due Process Clause of the Fifth Amendment, rather the Fourteenth Amendment, governs [plaintiff's] <u>Bivens</u> claim because federal action is at issue.").

Moreover, claims involving the mistreatment of federal detainees, as opposed to convicted prisoners, are governed by the Fifth Amendment's Due Process Clause, rather than the Eighth Amendment's proscription against cruel and unusual punishment.  <u>Id.</u>  Under either amendment, however, "[t]he standard for providing basic human needs to those incarcerated or in detention is the same."  <u>Id.</u>

Although "'[a] prisoner has a right . . . to be reasonably protected from constant threat of violence'" by his fellow inmates, a "'prison custodian is not the guarantor of a prisoner's safety.'"  <u>Purcell ex rel. Estate of Morgan v. Toombs County, Ga.</u>, 400 F.3d 1313, 1320-21 (11th Cir. 2005) (citations omitted).  To be actionable, a plaintiff must show the existence of "a substantial risk of serious harm;" the defendants' deliberate indifference to that risk; and causation.  <u>Id.</u> at 1319.

In the present action, there is no evidence, nor even allegations, to suggest that, while incarcerated at the PCCC,

12

Plaintiff was exposed to the "constant threat of violence" from other inmates or to any other "substantial risk of serious harm." Id. Moreover, even assuming the existence of a substantial risk of serious harm to Plaintiff, there is no evidence that Defendants knew of the risk and failed to take steps to correct it.

Because Plaintiff has failed to establish a constitutional violation by any Defendant in this action, Defendants are entitled to judgment as a matter of law on Plaintiff's claims.

## IV.   CONCLUSION

Based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendants PCCC, Burford, and Turner (Doc. 2) be granted, that Plaintiff's action against these Defendants and against Defendants Gonzales and Markle be dismissed with prejudice, and that judgment be entered in favor of Defendants on all claims.

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   Objection.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

13

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   Transcript (applicable where proceedings tape recorded). Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 12th day of August, 2008.

                                          s/BERT W. MILLING, JR.
                                          UNITED STATES MAGISTRATE JUDGE